[No. H032977. Sixth Dist. Apr. 29, 2009.]

In re K.F., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
K.F., Defendant and Appellant.

## COUNSEL

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye, Christina vom Saal and Dorian Jung, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUSHING, P. J.**—Appellant K.F. was directed to pay restitution after being adjudged a person described in section 602 of the Welfare and Institutions Code. On appeal he contends that the restitution order was erroneous in several respects. We sustain some of his objections and reject others. We will therefore affirm the order with modifications.

### BACKGROUND

The juvenile court sustained a petition under Welfare and Institutions Code section 602 alleging that appellant committed assault by means of force likely to produce great bodily injury and producing great bodily injury (Pen. Code, §§ 240, 245, subd. (a)(1), 12022.7, subd. (a)) and battery with serious bodily injury (Pen. Code, §§ 242, 243, subd. (d)). In a previous appeal, we affirmed that order with modifications. (*In re K.F.* (Aug. 13, 2008, H032410) [nonpub. opn.].)[1] The facts surrounding the assault are adequately set forth in that opinion, and are not pertinent here. The essential fact for present purposes is that in the course of the assault, the victim, Gregory Rangel, suffered a broken finger.

After the court sustained the petition, and while the appeal was pending, the probation officer submitted a report recommending that the court order restitution to Mr. Rangel in the amount of $22,088.66. The report was accompanied by a letter from the victim, to which were attached certain

[1] We have granted the parties' mutual request that we judicially notice the record in the previous appeal, though its contents have proven of minimal pertinence.

documents concerning medical services valued at about $18,000, lost time from work, and other claimed costs.

On March 28, 2008, the court conducted a restitution hearing. Among those present were the minor, his attorney, and his mother. Early in the hearing the prosecutor asked the court to amend the request by deducting $280 from the total requested for Mr. Rangel and directing payment of that sum to the Victims Restitution Fund instead. Defense counsel then addressed the request on the merits, opening with the observation that he was "new to this case . . . ." He expressed "our belief and a lay belief but I think a reasonable reading that the medical procedure used in this particular instance was clearly an over[-]treatment for a broken finger. [¶] Such things occur and are commonplace daily on school grounds and in sports arenas, and are generally a fairly simple procedure of adding a splint. [¶] This seemed to be well in excess of anything that's reasonable. So we would simply make that objection, and again in our reading and realizing that we are not bringing experts in at this point to contest it, simply alerting to the Court of our concerns in this particular matter. [¶] And we would submit it on the medical records as are in the Court file." Counsel went on, however, to express the desire to "subpoena some further medical records, particularly specifically x-rays that were not provided for or obtained in the trial," and asked the court to set a "compliance date . . . a few weeks out" in order to accommodate that request. He added, "Whether or not the appellate attorney is entitled to those or they have to jump through some other hoop to get them, that we deal with that or cross that bridge when we get there, but that we simply have a date that the medical facility can respond to our subpoena."

The court then told appellant's mother that she would be responsible for any restitution ordered, and after acknowledging that she was "having trouble talking," gave her an opportunity to "address the Court if you can." She replied, "I would just like to say that 21,000 is a lot of money to be paying out, and in regards to how the trial went and the outcome of the trial and the information that should have been submitted, that wasn't—and I have requested it, I think that it needs to have more of an evaluation. [¶] I worked in the medical field. I worked in orthopedics, and I think we need to go through the appeals part of it before, I'm asking you to if you could wait until the appeal is over before this account is set up. [¶] I'm on a fixed income and disabled. I'm on a fixed income and disabled, so I'm asking for time to have this case really evaluated, which it was just—it didn't go through that process. [¶] And I requested of the lawyer several times and it was just like my voice was fallen on deaf ears, and maybe we wouldn't be here at this point. [¶] And like I said, I worked with orthopedic doctors, and even though the medical records was written forms was submitted also, the film should

have been part of the evidence also, and should have been read, and that wasn't. [¶] Because what you see on films and what's on the paper is two different things. [¶] If my son is going to be charged—has been charged and convicted with this offense, and it's all I'm asking for you to sustain and wait till the appeals process."

The court viewed these comments as a request for a stay of restitution proceedings pending appeal, which it denied. It then proceeded to "set restitution in the amount of 21,808 dollars and 66 cents for Gregory Rangel, R-A-N-G-E-L, and 280 dollars to the Victim Compensation Fund."[2] It declined to set a delayed "compliance date," stating that if appellate counsel wished some relief in this regard, he or she "is going to have to approach the Court . . . ." It scheduled a restitution review for September 19, 2008.

This timely appeal followed.

DISCUSSION

## I. *Governing Statute*

■ Appellant asserts that several elements of the restitution order were "not supported by any evidence" showing them to be compensable under the restitution statute. The order was made under Welfare and Institutions Code section 730.6 (section 730.6), the declared purpose of which is to ensure "that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any economic loss as a result of the minor's conduct shall receive restitution directly from that minor." (§ 730.6, subd. (a)(1).) The statute directs that the court in such a case "shall order the minor to pay . . . [¶] . . . [¶] (B) Restitution to the victim or victims, if any, in accordance with subdivision (h)." (§ 730.6, subd. (a)(2).) It goes on to provide, in pertinent part, "Restitution . . . shall be imposed in the amount of the losses, as determined. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court at any time during the term of the commitment or probation. The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. A minor's inability to pay shall not be considered a compelling or extraordinary reason not to impose a restitution order, nor shall inability to pay be a consideration in determining the amount of the restitution order. A restitution order . . . shall be of a dollar amount sufficient to *fully reimburse the victim or victims for all determined economic losses incurred* as the result

---

[2] The minute order directs restitution in the stated amounts—$21,808.66 and $280.00—but makes both sums payable to Gregory Rangel. This is an obvious error. We will direct its correction.

of the minor's conduct for which the minor was found to be a person described in Section 602, including all of the following: [¶] . . . [¶] (2) Medical expenses. [¶] (3) Wages or profits lost due to injury incurred by the victim . . . . [¶] (4) Wages or profits lost by the victim . . . due to time spent as a witness or in assisting the police or prosecution. . . ." (§ 730.6, subd. (h), italics added.)

The statute grants the minor "the right to a hearing before a judge to dispute the determination of the amount of restitution," and empowers the court to modify an order after it is made. (§ 730.6, subd. (h).) It also permits the court, "[w]hen the amount of victim restitution is not known at the time of disposition," to declare that the amount will be determined later. (*Ibid.*) It declares that the order "shall identify the losses to which it pertains, and shall be enforceable as a civil judgment . . . ." (§ 730.6, subd. (i).)

## II. *Preservation of Objection*

Respondent contends that appellant's challenges to the restitution order have not been preserved for appeal. But the gist of the challenges is that certain components of the restitution order are not shown by substantial evidence to come within the terms of the governing statute. Sufficiency of the evidence has always been viewed as a question necessarily and inherently raised in every contested trial of any issue of fact, and requiring no further steps by the aggrieved party to be preserved for appeal. (See *People v. Viray* (2005) 134 Cal.App.4th 1186, 1217 [36 Cal.Rptr.3d 693]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2008) ¶ 8:276.1, p. 8-178 (rev. # 1, 2008); 4 Cal.Jur.3d (2007) Appellate Review, § 167, p. 240.) This view has been repeatedly adopted in appeals from juvenile court orders. (See *In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1559–1561 [25 Cal.Rptr.3d 134], and cases cited.)

Respondent's implicit assertion of a contrary rule appears to rest entirely on *People v. Brasure* (2008) 42 Cal.4th 1037, 1075 [71 Cal.Rptr.3d 675, 175 P.3d 632] (*Brasure*). That was a capital murder case in which the court dealt with at least a dozen major contentions before reaching the one relevant here, which was that a restitution order in favor of the victim's mother was " 'inappropriate' because of evidence (not introduced at trial) that [she] had sought a restraining order against her son and because [her] economic loss was not shown by documentation or sworn testimony." (*Ibid.*) The court held that "by his failure to object, defendant forfeited any claim that the order was merely unwarranted by the evidence, as distinct from being unauthorized by statute. (*People v. Smith* (2001) 24 Cal.4th 849, 852 [102 Cal.Rptr.2d 731, 14 P.3d 942].)" (*Ibid.*)

Respondent apparently reads *Brasure* as a repudiation or abandonment of the rule noted above, i.e., that no predicate objection is required to challenge the sufficiency of the evidence on appeal. We cannot join in this reading. The Supreme Court itself explicitly reaffirmed the stated rule in *People v. Butler* (2003) 31 Cal.4th 1119, 1126 [6 Cal.Rptr.3d 730, 79 P.3d 1036]. Nor is a contrary rule suggested by *People v. Smith, supra,* 24 Cal.4th at page 852, the one decision cited on this point in *Brasure, supra,* 42 Cal.4th at page 1075. The court in *Smith* listed a number of decisions imposing a forfeiture of objections going to *defects of form or procedure,* such as a failure to state reasons for a sentence choice or to make a required finding. (*People v. Smith, supra,* 24 Cal.4th at p. 852.) It did not purport to hold that a party may similarly forfeit an objection to *the sufficiency of the evidence. Brasure* cannot be understood to have adopted such a rule.

We find no waiver of defendant's points.

### III. *Standard of Review*

Generally speaking, restitution awards are vested in the trial court's discretion and will be disturbed on appeal only where an abuse of discretion appears. (*People v. Fortune* (2005) 129 Cal.App.4th 790, 794 [28 Cal.Rptr.3d 872].) Like most generalizations, however, this one can lead to errors if not applied with circumspection. No court has discretion to make an order not authorized by law, or to find facts for which there is not substantial evidence. A reviewing court will generally examine an issue of law independently of a lower tribunal's ruling.[3] (See *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 558 [66 Cal.Rptr.3d 1] ["we will not defer to a trial court's determination on a question of law"].) Its determination on an issue of fact is reviewed under the substantial evidence standard. (See *People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 [127 Cal.Rptr.2d 319].) The standard of review therefore depends on the nature of the question presented.

Here, as we have said, the gist of defendant's argument is that the evidence before the trial court was insufficient to establish the statutory conditions for an award of restitution for medical expenses in the amounts stated. This contention necessarily implies two component questions: the nature and meaning of the statutory conditions for an award, and the sufficiency of the evidence to establish those conditions. The former is a question of law, which

---

[3] We qualify this statement only to acknowledge that an *administrative agency's* interpretation of a law within its special purview may be entitled to appellate deference. (See *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 219 [130 Cal.Rptr.2d 564].)

we will consider without deference to the trial court's action. The latter we will review with the usual deference to the court's resolution of any factual issues tendered.

### IV. *Medical Costs*

Defendant notes that the statute has been construed to permit reimbursement only for demonstrated "actual loss" to the victim. (*In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1018 [67 Cal.Rptr.3d 734] (*Anthony M.*).) He contends that the materials submitted below failed to show that the victim had sustained actual loss on account of medical treatment necessitated by the assault. His challenge focuses on two amounts that were included in the restitution order: $17,261.53 associated with services rendered by "Kaiser," and $583.32 associated with "Kaiser Ambulance Service." He complains that these claims were "based on statements of 'benefits' generated by the hospital and ambulance company, not on evidence of payment to the hospital or the ambulance company or even on invoices to Rangel." The tendered documents, he contends, "do not demonstrate 'actual loss' on Rangel's part, or even that he had been billed for any particular figure, much less that he actually *paid* for medical treatment." (Original italics.)

Appellant cites *Anthony M., supra*, 156 Cal.App.4th 1010, where the court reversed an order to pay restitution of over $1 million based on services rendered by a medical provider. The rationale for that decision, however, has no application here. The key fact was that the provider had sought payment from Medi-Cal; this had the effect of *precluding* the provider from "seeking payment from the [victim] for any unpaid balance other than the nominal deductible or cost-sharing amount." (*Id.* at p. 1018, citing 42 C.F.R. § 447.15 (2007); Welf. & Inst., Code, §§ 14019.3, subd. (d), 14019.4, subd. (a); *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 820 [135 Cal.Rptr.2d 1, 69 P.3d 927].) In those circumstances, the court held, the victim's losses were limited to the sums paid by Medi-Cal. (See *Anthony M.*, at p. 1019.) Since Medi-Cal had not yet made final payment, the proper amount of restitution could not have been ascertained at the time of the order, and the trial court should have postponed a determination of that issue. (*Ibid.*)

*Anthony M.* is best understood as resting on the conclusion that because the service provider was *barred* from recovering the cost of services from the victim, the victim could not be found to have "incurred" those costs for purposes of a criminal restitution order. (See § 730.6, subd. (h) [order shall "fully reimburse the victim . . . for all determined economic losses incurred as the result of the minor's conduct"].) Nothing in the present record suggests

a similar bar to recovery against the victim. To "incur" is "to become liable or subject to: bring down upon oneself." (Merriam-Webster's Collegiate Dict. (10th ed. 1999) p. 590.) To constitute evidence of a "loss incurred," there must be some basis to conclude that the victim is "liable or subject to" a charge. Where collection of the charge is barred by law, the victim is not liable or subject to it, and the charge is not "incurred." This rationale has no application here, where no such legal bar to recovery appears.

However, appellant does touch on a vulnerability in the order before us when he asserts that the two challenged documents "do not demonstrate 'actual loss' " to the victim, "or even that he had been billed for any particular figure." This raises the question whether these documents constituted substantial evidence that the sums they recited reflected charges "incurred" by the victim in the sense we have just stated. One of the documents satisfies this test, but the other does not.

The first document is a letter from Healthcare Recoveries in Louisville, Kentucky, stating, "KAISER CALIFORNIA NORTH is using the services of Healthcare Recoveries to obtain reimbursement of the medical benefits it has provided on your behalf relating to your 5/12/2007 accident. [¶] The purpose of this letter is to serve as the Health Plan's formal notice to you that in the event you receive settlement from an insurance carrier or other party, the plan may have a right of reimbursement for medical benefits provided. [¶] For your convenience, we have enclosed a Consolidated Statement of Benefits with the total provided benefits to date." The enclosed statement consisted largely of a table listing medical services and materials furnished to Mr. Rangel, with columns labeled "Billed Amt." and "Provided Benefits." The two columns contained identical numbers for each service provided. Above the table was the text, "Instructions: If remitting payment, make checks payable to: Healthcare Recoveries. [¶] Write the patient's name, GREGORY J. RANGEL, and event number [specified], on the check." At the end of the statement appeared the following sums: "Total Billed Charges $17,261.53"; "Total Benefits Provided $17,261.53"; "Amount Received $0.00"; and "Balance Due $17,261.53."

On its face this document reflects "billed charges" of the specified amount. It therefore constitutes substantial evidence that these charges were "incurred" by the victim. Assuming it was not itself a bill, as defendant asserts, it was nonetheless evidence of billing. It could be reasonably viewed by the trial court as evidence that the victim had been billed for the amount stated.

We acknowledge some uncertainty arising from the well-known status of Kaiser Hospitals as a health maintenance organization providing medical services to its members rather than a medical service provider with a

conventional creditor-debtor relationship to its patients. Apart from the described records, however, the present record is entirely silent on this subject. We are therefore left with the uncontested recital in the quoted document that the victim was "billed" for the stated amount. This makes it unnecessary, and indeed impossible, to consider the effect on criminal restitution of a victim's having received treatments for which he in fact *was not billed*.[4]

The other document challenged by appellant is an "Explanation of Benefits" from Kaiser, apparently reflecting the value of ambulance service provided. It lists $582.32 in "Ambulance Charges." It also describes this sum as the "amount charged." But it bears the prominent legend, "This is not a bill"; it shows zeros in the column marked "Coinsurance/Copayment"; there is no entry in the column marked "Amount Paid"; and in the space marked "Your Obligation" appears the sum "0.00." This may be substantial evidence that Kaiser furnished ambulance services it considered to be worth $582.32, but it is not substantial evidence that the victim *incurred* a debt or loss in that amount, or any amount. On the contrary, it explicitly shows an incurred loss of zero.

Nor do any of the other documents submitted show that this was a determinable loss incurred by the victim. Both the probation officer's report and the victim's cover letter suggest that some of the items for which restitution was sought may not have been losses incurred. The probation officer wrote, "The victim submitted the restitution claim with supporting documents attached and wants the Court to understand the charges represent both deductibles and insured reimbursement. The victim feels *the suspect should be responsible for repaying the insurers*, as it was his behavior that was responsible for the incident which resulted in the expenses incurred not that of the insurers."[5] The victim's own letter stated only that the attached

---

[4] Appellant also suggests that the court did not make sufficient inquiry into the nature of the charges. He quotes the statement in *In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1390 [122 Cal.Rptr.2d 376], that "the sentencing court is itself required to evaluate the evidence and resolve the issue of the proper amount of restitution which will fully reimburse the victims." But as appellant acknowledges, the trial court in that case had "refused to consider appellant's proffered evidence challenging the amount and necessity of the victims' claimed economic losses." (*Id.* at p. 1391.) Here the only thing the court appeared unwilling to do was continue the hearing for an unspecified period to permit the defense to secure the victim's X-rays in order to evaluate the reasonableness of the treatment he received. This refusal was not unreasonable given the vagueness of the proposed inquiry and trial counsel's evident uncertainty as to the responsibility for pursuing it as between himself and appellate counsel. Nor is that refusal challenged as error. The relevant point for present purposes is that the court did not refuse to consider any evidence, or any challenge to the evidence, before it. This fact renders *Brittany L.* inapposite.

[5] The victim was undoubtedly entitled to express his views on this subject, but they contradict the will of the California Legislature as expressed in Welfare and Institutions Code

documents reflected amounts "each organization / company *or* our family has paid . . . ." As a result, any evidence that a particular charge was actually "incurred" by the victim for purposes of the restitution statute must be found in the attached documents. With respect to ambulance services, no such evidence appears.

■ Respondent quotes a passage from *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048 [29 Cal.Rptr.3d 120] which, read in isolation, seems to suggest that the state can carry its burden of proof on the amount of restitution merely by submitting a probation report that " 'includes information on the amount of the victim's loss and a recommendation as to the amount of restitution,' " whereupon " 'the defendant must come forward with contrary information to challenge that amount.' " But respondent has lifted this statement out of context. The court in that case found that the amount of restitution was adequately established by evidence including unobjected-to statements in the probation report from the victims, an itemization of amounts sought, "a recitation of their medical *bills*" and certain expenses incurred by them, receipts for certain items claimed, and expert testimony establishing the reasonableness of certain amounts. (*Ibid.*, italics added.) The case does not hold, and we reject any suggestion, that a burden of refutation may be imposed on the defendant merely by asserting that a stated amount is sought as restitution. Here there was no evidence, prima facie or otherwise, that the value of ambulance services constituted an incurred cost.

## V. *Lost Wages*

Appellant contends that there was insufficient evidence of wage loss by the victim. It is true that the showing in support of this claim is inferential at best. Nothing in the probation report identified any wage loss as such. The itemization there, on which the court's order was based, included an entry of $2,643.78 labeled "Lockheed Martin Space." This figure is evidently derived from an entry in the victim's own itemization, which under the heading "Lockheed" listed "Sick Leave" of $1,762.56 and "Medical" of $881.28. These sums in turn are illuminated by an accompanying notice of allowed claim from the Victim Compensation and Government Claims Board. It indicates that Rangel missed two weeks from work; that his gross weekly pay was $2,160.00; and that his weekly net after taxes was $1,468.80.[6] The Board calculated his lost wages at twice the weekly net, or $2,937.60. However, the

section 730.6, which authorizes only restitution to "the victim or victims" (*id.*, subd. (a)(2)(B)), or in the case of entities other than natural persons, to "direct victim[s]" (*id.*, subd. (k)). Third parties such as insurers are not entitled to restitution under the statute. (See *People v. Birkett* (1999) 21 Cal.4th 226, 246 [87 Cal.Rptr.2d 205, 980 P.2d 912]; *People v. Sexton* (1995) 33 Cal.App.4th 64, 70, 72 [39 Cal.Rptr.2d 242].)

[6] Appellant asserts that the victim actually lost 1.8 weeks. No record citation is supplied for this assertion, but it is apparently derived by calculations based on the amount given as sick

Board also found that he had received "reimbursements" totaling $3,273.84, consisting of $1,762.56 "sick" plus $881.28 "medical" plus $630 state disability insurance. Finding a "net gain" of $336.24, the Board paid the victim nothing for lost wages.

■ Appellant cites the Board's report of reimbursement as affirmative evidence that the victim suffered no loss by virtue of his time off work. "No evidence was introduced," writes counsel, "suggesting that Rangel had repaid those wages or would be obliged to do so in the future, or—assuming that he lost accrued hours of sick time—what the economic value to Rangel of his sick time might have been." The first part of this disjunctive assertion is true: there was no evidence that Rangel would have to repay these sums. But the second part is not. The evidence was sufficient to show that the victim continued to be paid by his employer only by depleting his sick leave. This depletion represented a loss to him—the credits consumed would not be available to cover future illnesses or for whatever other beneficial purpose the employer might allow. While its precise economic value might be uncertain, the court in making a restitution order is not required to determine the "exact amount of loss," so long as it employs "a rational method that could reasonably be said to make the victim whole," and is not "arbitrary and capricious." (*People v. Thygesen* (1999) 69 Cal.App.4th 988, 992 [81 Cal.Rptr.2d 886].) The sick leave used by the victim was a valuable right which he lost as a direct result of appellant's conduct. Given that the exact value of that loss was dependent to some extent on unknown variables, including unknowable future contingencies, the trial court did not act irrationally in simply allowing the value of the time it represented.

VI. *State Disability*

Defendant asserts that the order is erroneous insofar as it includes $630 for state disability payments. As he asserts, this sum reflects amounts paid *to* the victim by the state disability insurance fund. The record suggests no basis on which this sum might be viewed as a *loss* incurred by the victim. Respondent does not defend this portion of the award. We will therefore direct a correction of the order to delete it.

---

and medical leave, and the pay rates used by the Board. Thus appellant points out that the sum apparently paid by the employer ($2,643.78) is six cents short of the figure derived by multiplying his weekly net pay ($1,468.80) by 1.8. This is indeed strongly suggestive of appellant's assertion, which is however somewhat academic. Where the six cents went is anyone's guess.

## DISPOSITION

The trial court is directed to modify its restitution order to (1) direct, in accordance with its oral ruling, that the $280 component of the award is payable to the Victim Compensation Fund and not to the victim; (2) subtract $582.32 representing ambulance services; and (3) subtract $630 representing state disability benefits paid to the victim rather than losses incurred by him. As so modified the judgment is affirmed.

Premo, J., and Elia, J., concurred.