Filed 12/9/14  In re D.G. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| In re D.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>D.G.,<br><br>      Defendant and Appellant. | A141000<br><br>(Contra Costa County<br>Super. Ct. No. J11-00533) |

Minor D.G. admitted being an accessory after the fact to an assault with a firearm (Pen. Code, § 32).  The assault left the victim seriously wounded and with a hospital bill in excess of $400,000.  D.G. challenges a juvenile court restitution order requiring him and his codefendant to pay 20 percent of the victim's hospital bill.  D.G. contends that the juvenile court abused its discretion because the victim's debt was written off by the hospital and, accordingly, there is no evidence of economic loss.  In the alternative, D.G. maintains that the restitution order does not serve the juvenile court's rehabilitation goals. We affirm the restitution order.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of the crime in this case are not particularly relevant and we state them only briefly. D.G., who was 16 years old at the time, admitted being an accessory after the fact to an assault with a firearm, as alleged in the first count of a

1

wardship petition filed pursuant to Welfare and Institutions Code section 602.[1] Specifically, D.G. admitted that he provided a gun to his codefendant, Anthony S., was present when Anthony fired shots at the victim, and hid and sold the gun after the shooting. As a result of the shooting, the victim sustained injuries to his buttocks, rectum, pelvic artery and vein, as well as five areas of his bowel. He was treated at John Muir Medical Center. Multiple surgeries were required to repair the damage and extract the bullet.

The juvenile court accepted D.G.'s admission, sustained the petition as to count one, and dismissed an additional charge that D.G. unlawfully possessed a firearm (Pen. Code, former § 12101, subd. (a)), as well as criminal street gang enhancements. At the disposition hearing on April 25, 2011, the juvenile court received a probation report, which included details regarding D.G.'s learning disabilities and D.G.'s statement regarding threats from other gang members and his plans to disassociate from the gang. The probation officer recommended, "[D.G.] needs to be held accountable for his participation in such a dangerous crime. . . . He should be partially responsible for making the victim whole." The court concluded that D.G. was a person described by section 602, ordered his placement outside his mother's home, and ordered restitution to be determined at a later date.[2]

On August 8 and September 12, 2013, the Honorable Barry Baskin presided over a restitution hearing in Anthony's case. A billing statement from John Muir, addressed to the victim, was entered into evidence. It showed the victim's account balance was $412,546.89.

Anthony's counsel called Larry Blythe, John Muir's manager of patient billing, as a witness. Blythe testified that nothing had been paid on the victim's bill and that the hospital had "written off the balance based [on] the patient's indigent status." Blythe also

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] D.G. returned home, in October 2012, after approximately a year and a half in out-of-home placement.

2

testified that the balance had been written off some time ago and no effort would be made to collect from the victim on the debt.

On cross-examination, Blythe explained that when an outstanding bill was written off, "[i]t is considered uncollectible debt and we claim it as charitable dollars." Blythe explained, "It's a debt that we would not pursue or expect to recover funds from." Judge Baskin asked Blythe: "[A]ssuming the patient were to hit the lottery or get some kind of restitution recovery from a third party, your actions in writing off the debt [are] not final; is that right?" Blythe replied, "Sir, . . . there is no attempt to retro-recover. But if the ability to recover the debt presented itself, settlement options or ability or transparency on someone hitting the lottery, then we would accept that recovery."

Judge Baskin also asked, "Does John Muir actively monitor which of their patients have potential restitution recoveries from related accident or criminal proceedings?" Blythe replied, "To the best of our ability, prior to write off, we do. Once the account balance is written off, we generally do not go back and look for other methods of reimbursement." Blythe stated that at the time the victim's debt was written off, the hospital was not aware of a criminal proceeding in which Anthony or D.G. would be asked to pay the amount due John Muir.

After the matter had been submitted, Judge Baskin stated: "It seems to me that the restitution amount should be considered regardless of the . . . financial circumstances of the victim. [¶] . . . There's also no dispute . . . that it would be a serious burden, probably for the remainder of their lives, for these two minors . . . to pay [$412,546.89.] [¶] And so it seems to me that the Court is required, in the exercise of its discretion and the circumstances as a whole, as presented here at this hearing, to fashion a remedy that is taking into account the fact of the hospital having made this accounting . . . entry and also the fact that the minor must be held accountable together with the co-responsible. It seems to me that under the circumstances as a whole, the total amount that equals to 20 percent of the amount that was owing is a reasonable amount." The court set restitution at $81,509.38 with a credit of $1,000 for the amount that Anthony had already paid to the victim restitution fund. Judge Baskin indicated that Anthony "will be

3

responsible for that jointly and severally with [D.G.]" and directed the probation department "to get [D.G.'s] case on calendar after notice to [D.G.] so that restitution is scheduled in his case."

D.G.'s restitution hearing was held on February 6, 2014, before the Honorable Thomas Maddock. D.G.'s counsel argued that because the hospital was not a direct victim and the victim himself had not paid anything on the debt, there was no actual loss and nothing was owed in restitution. D.G.'s counsel also argued that imposing approximately $80,000 in restitution would be punitive, rather than rehabilitative. Judge Maddock took judicial notice of the restitution proceedings in Anthony's case and entered a final restitution order in the amount of $82,509.38, for which D.G., Anthony, and their respective parents were jointly and severally liable. Judge Maddock explained: "When a minor does something that causes an extreme amount of expense to be incurred, there's a consequence for that. That's part of being personally responsible for your actions. That's what restitution is for. Restitution has long been acknowledged as part of the rehabilitative process. That is why in all juvenile delinquency cases where there is appropriate restitution it's ordered. . . . [¶] . . . [¶] I am also satisfied that Judge Baskin's determination of an 80-percent reduction is appropriate given all the circumstances." D.G. filed a timely notice of appeal from the restitution order.[3]

## II.    DISCUSSION

"In proceedings involving minors, the juvenile court is vested with discretion to order restitution consistent with the goals of the juvenile justice system. [Citation.] The goal of the juvenile justice system is to provide minors under the jurisdiction of the court with care, treatment, and guidance that is consistent with their best interests and to hold them accountable for their behavior as appropriate under the circumstances, consistent with the interests of public safety and protection. [Citation.] In enforcing, interpreting and administering the juvenile court law, the trial court also is to consider the safety and

---

[3] The restitution order is appealable as a postjudgment order. (§ 800, subd. (a); *In re Julian O.* (1994) 27 Cal.App.4th 847, 852.)

4

protection of the public, the importance of redressing injuries to victims and the best interests of the minor. [Citation.]" (*In re Alexander A*. (2011) 192 Cal.App.4th 847, 853.)

"Generally speaking, restitution awards are vested in the trial court's discretion and will be disturbed on appeal only where an abuse of discretion appears. . . . A reviewing court will generally examine an issue of law independently of a lower tribunal's ruling. [Citation.] Its determination on an issue of fact is reviewed under the substantial evidence standard. [Citation.]" (*In re K.F.* (2009) 173 Cal.App.4th 655, 661, fn. omitted (*K.F.*).) Here, D.G. argues the evidence before the trial court was insufficient to establish the statutory conditions for an award of restitution. Such an argument "necessarily implies two component questions: the nature and meaning of the statutory conditions for an award, and the sufficiency of the evidence to establish those conditions. The former is a question of law, which we will consider without deference to the trial court's action. The latter we will review with the usual deference to the court's resolution of any factual issues tendered." (*Id.* at pp. 661–662.)

"In 1982, by initiative measure, the voters passed Proposition 8 giving all crime victims the constitutional right to receive restitution from the offender who was convicted of committing a crime against them. (Cal. Const., art. I, § 28, subd. (b).) The Legislature implemented this section by amending the restitution statutes applicable to adult offenders [citation] and section 730.6, which is the parallel provision applicable to juvenile offenders. [Citation.]" (*In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1016, fn. omitted (*Anthony M.*).)

In relevant part, section 730.6 provides: "(a)(1) It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 *who incurs any economic loss as a result of the minor's conduct* shall receive restitution directly from that minor. [¶] (2) Upon a minor being found to be a person described in Section 602, . . . the court shall order the minor to pay, in addition to any other penalty provided or imposed under the law, both of the following: [¶] (A) A restitution fine in accordance with subdivision (b). [¶] (B) Restitution to the victim or

5

victims, if any, in accordance with subdivision (h). [¶] . . . [¶] (h) Restitution ordered pursuant to subparagraph (B) of paragraph (2) of subdivision (a) shall be imposed *in the amount of the losses*, as determined. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record.  A minor's inability to pay shall not be considered a compelling or extraordinary reason not to impose a restitution order, nor shall inability to pay be a consideration in determining the amount of the restitution order.  A restitution order pursuant to subparagraph (B) of paragraph (2) of subdivision (a), to the extent possible, shall identify each victim, unless the court for good cause finds that the order should not identify a victim or victims, and the amount of each victim's loss to which it pertains, and shall be of a dollar amount sufficient to fully reimburse the victim or victims for all *determined economic losses incurred as the result of the minor's conduct* for which the minor was found to be a person described in Section 602, including all of the following: [¶] . . . [¶] (2) Medical expenses."  (Italics added.)

D.G. contends that the restitution order exceeded this statutory authority because there was no substantial evidence that the victim incurred an economic loss after John Muir's write-off.  Our colleagues in Division Two of this court have recently rejected precisely the same argument on appeal from the restitution order entered against D.G.'s codefendant.  (*In re Anthony S.* (2014) 227 Cal.App.4th 1352, 1356 (*Anthony S.*).)

The *Anthony S.* court began by observing that "without substantial evidence that [the victim] incurred an economic loss, a restitution order is not authorized by section 730.6."  (*Anthony S., supra,* 227 Cal.App.4th at p. 1356.)  However, the court determined that "incur" means "to become liable or subject to."  (*Id.* at pp. 1358–1359, citing *K.F., supra,* 173 Cal.App.4th at pp. 662–663.)  The court explained:  "The billing statement from John Muir was addressed to [the victim] and is substantial evidence that he incurred the charges stated.  That the billed amount was the true value of the services provided to [the victim] was not disputed at the hearing to set restitution.  Despite evidence that John Muir had written off the charges to [the victim] as uncollectible debt, and despite evidence that seeking to collect on such debts was not the 'general' practice

6

of the hospital, there was no evidence that John Muir had released [the victim] from the debt in such a way that collection would be barred by law. [¶] . . . [¶] [T]he fortuity that [the victim] was indigent and John Muir had decided to write off the amount owed as an uncollectible debt should not shield Anthony from paying restitution any more than the fortuity that the victim was a participant in an HMO or covered by Medi-Cal or third party insurance." (*Anthony S.,* at pp. 1359–1360.)

Finally, the *Anthony S.* court rejected Anthony's argument that awarding restitution would provide the victim with a windfall. (*Anthony S., supra,* 227 Cal.App.4th at pp. 1360–1361.) The court explained: "Because there is no legal bar to John Muir seeking reimbursement from any restitution that Anthony pays in the future, the amount of restitution ordered by the court is not a windfall to [the victim]. . . . [¶] . . . [E]ven though John Muir chose not to pursue [the victim] for the charges billed to him on account of medical services received, in the absence of a legal bar preventing John Muir from collecting in the future, or an unequivocal statement from John Muir that it would not exercise its rights, it was not contrary to section 730.6 for the court to base restitution on the billed charges, which were established by substantial evidence." (*Anthony S.,* at pp. 1360–1361.)

The *Anthony S.* court relied on our decision in *In re Eric S.* (2010) 183 Cal.App.4th 1560 (*Eric S.*), which involved restitution ordered to a victim who was a member of an HMO, Kaiser California North, and was not required to pay for medical services he received at Kaiser. (*Id.* at pp. 1562, 1565.) Relying on this fact, the ward argued that restitution should be limited to the victim's out-of-pocket expenses. (*Id.* at pp. 1562, 1563–1564.) We rejected the argument, noting that "it has been held that a victim whose medical treatment was covered by Medicare/Medi-Cal is entitled to restitution for the total costs that had been charged to his Medi-Cal file. [Citation.]" (*Id.* at p. 1564.) We concluded: "Assuming the victim was not obligated to pay Kaiser for any amount above his membership fee in the HMO, charges were nonetheless incurred on his behalf as a result of appellant's criminal conduct. The fortuity that the victim had purchased membership in an HMO, like the fortuity that a victim has purchased third

7

party insurance [citation], or the fortuity that a victim is covered by Medicare/Medi-Cal [citation], should not shield appellant from paying restitution for the medical expenses in this case." (*Id.* at p. 1565.) But because the district attorney had submitted documentation showing that Kaiser would accept a reduced amount as payment in full, we concluded that restitution should be set according to the amount that Kaiser was willing to accept for the services it rendered. (*Id.* at p. 1566.)

D.G. suggests that *Eric S.* supports his position because "[t]he proper amount of restitution cannot exceed the amount the hospital will accept as full payment for medical services from the victim." The *Anthony S.* court rejected the same argument, saying, "[t]o account for a debt as uncollectible does not mean that zero is regarded as payment in full." (*Anthony S., supra,* 227 Cal.App.4th at p. 1358, fn. 4.) We agree.

Nor does *Anthony M.*, *supra,* 156 Cal.App.4th 1010, support D.G.'s claim. The *Anthony M.* court held that the juvenile court erred by imposing restitution in excess of the amount actually paid to a medical provider by Medi-Cal. (*Id.* at pp. 1013–1014.) Key to the *Anthony M.* court's holding, however, was its observation that "[b]y law, if a medical provider accepts payment from Medi-Cal for medical services rendered, it is barred from seeking any unpaid balance from the patient [citations], although Medi-Cal may seek reimbursement from the patient or other responsible party for the amount it paid to the provider [citations]." (*Id.* at p. 1014; see also pp. 1018–1019.) The court went on to say, "We . . . hold that the victim's economic losses for medical expenses under section 730.6 are limited to the amount of medical expenses *paid or incurred* by the victim as the statute expressly provides." (*Id.* at p. 1015, italics added.)

Generally, a document reflecting " 'billed charges' " constitutes substantial evidence that these charges were " 'incurred' " by the victim. (*K.F., supra*, 173 Cal.App.4th at p. 663; *Anthony S., supra,* 227 Cal.App.4th at p. 1359.) Here, in contrast to the circumstances presented in *Anthony M.,* John Muir is not barred by law from seeking reimbursement from the victim. In fact, Blythe testified that "if the ability to recover the debt presented itself, settlement options or ability or transparency on someone hitting the lottery, then [John Muir] would accept that recovery." As in

8

*Anthony S.* and *Eric S.*, the fortuity that D.G.'s victim was indigent and John Muir decided to write off the amount owed as an uncollectible debt should not shield D.G. from paying restitution. The John Muir bill constitutes substantial evidence that the victim incurred charges for medical services in excess of $400,000.[4] (*Anthony S.,* at p. 1361.)

Nor are we persuaded that the restitution order does not serve a rehabilitative purpose. D.G. contends: "[T]he juvenile court further abused its discretion in ordering [D.G.] to pay restitution in the amount of $82,509.38, where [D.G.] had already been held accountable for his actions and spent significant time in rehabilitation. The amount ordered was so egregious to be punitive. [¶] . . . [¶] . . . Payment of . . . $82,509.38 . . . would be impossible for [D.G.], given his educational deficits and present inability to earn that money." The argument is easily dismissed. Section 730.6, subdivision (a)(2)(B), makes it mandatory for the juvenile court to order victim restitution whenever a minor is found to be a person described in section 602. The legislative objective of ordering restitution in a juvenile case is "to rehabilitate the defendant, deter future delinquent behavior, and make the victim whole by compensating him for his economic losses." (*Anthony M., supra,* 156 Cal.App.4th at p. 1017; accord, *In re S.S.* (1995) 37 Cal.App.4th 543, 549.) In this case, Judge Maddock made clear that ordering D.G. to pay a portion of the victim's medical services would help D.G. understand there were consequences for his actions. We cannot consider D.G.'s veiled

---

[4] Contrary to D.G.'s suggestion, the bill in this case bears no resemblance to the evidence at issue in *K.F., supra*, 173 Cal.App.4th 655. In *K.F.*, a Kaiser " 'Explanation of Benefits' " was admitted, which listed $582.32 in " 'Ambulance Charges.' " But the document also stated, " 'This is not a bill,' " and in the space marked " '[y]our [o]bligation' " appeared the sum " '0.00.' " (*Id.* at p. 664.) The *K.F.* court explained: "This may be substantial evidence that Kaiser furnished ambulance services it considered to be worth $ 582.32, but it is not substantial evidence that the victim *incurred* a debt or loss in that amount, or any amount. On the contrary, it explicitly shows an incurred loss of zero." (*Ibid.*) Here, the record shows only that the debt has been written off and that, although recovery would be accepted, efforts to collect the debt would not necessarily be made.

9

inability to pay argument.  Section 730.6, subdivision (h), provides:  "A minor's inability to pay shall not be considered a compelling or extraordinary reason not to impose a restitution order, nor shall inability to pay be a consideration in determining the amount of the restitution order."  The juvenile court did not abuse its discretion.

### III.    DISPOSITION

The restitution order is affirmed.

_____

BRUINIERS, J.


WE CONCUR:


_____

JONES, P. J.


_____

NEEDHAM, J.