Filed 3/22/23  P. v. Doan CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PHIET THE DOAN,<br><br>    Defendant and Appellant. | H048975<br>(Santa Clara County<br>Super. Ct. No. C1775955) |

Phiet The Doan pleaded no contest to a felony charge of stalking (Pen. Code, § 646.9, subd. (a)).[1]  The trial court sentenced Doan to 120 days in county jail and ordered Doan to pay a total of $63,926.48 in victim restitution.

On appeal, Doan challenges the restitution order on several grounds.  He argues that there was insufficient evidence to support the victim's request for lost wages, which the court included in its restitution order.  He also contends that the restitution award violated his right to a jury trial under both the United States and California Constitutions. He further argues that the restitution amount constituted an excessive fine, which violated his due process and equal protection rights based on his inability to pay the amount ordered.  Finally, Doan claims, to the extent that his trial counsel failed to object to the restitution order on the above-listed grounds, he received ineffective assistance of counsel.

---

[1] Undesignated statutory references are to the Penal Code.

For the reasons below, we find no merit to Doan's claims and affirm the restitution order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background[2]

In October 2017, the victim, D.H., filed a police report with the San Jose Police Department regarding allegations of stalking. D.H. stated that she and Doan were former high school acquaintances and teammates. She stated that Doan tried to pursue a relationship with her in high school, but she declined his advances. D.H. indicated that after Doan's graduation, he was not in contact with her for approximately six to eight years.

D.H. stated that in 2017, after she returned from an extended trip abroad for one-and-a-half years, she received a call and threatening voicemail from Doan. After receiving this voicemail, D.H. discovered that Doan had left her a number of voicemails over the course of 2016, many of which included profanities, screaming, and cursing. Between September and October 2017, Doan continued to leave threatening voicemails on D.H.'s phone, including a potential death threat and a voicemail in October 2017, saying "[f]uck you and your family. You all need to die!" D.H. also reported that Doan had been observed vandalizing her car with a large rock around October 12, 2017.

Shortly after making her first report, D.H. subsequently informed police that she had captured surveillance footage of Doan coming to her home on October 25, 2017, and slashing her front and back car tires several times.

### B. Procedural Background and Restitution Hearing

On October 25, 2017, the Santa Clara County District Attorney filed a felony complaint against Doan, charging him with stalking by repeated following or malicious

---

[2] The following facts are drawn from a psychiatric evaluation of Doan, which quotes the police report.

harassing (§ 646.9, subd. (a); count 1) and vandalism in the amount of $400 or higher (§ 594, subds. (a), (b)(1); count 2).

On October 29, 2018, the trial court found Doan not competent to stand trial. The court deemed Doan's competency restored on January 9, 2020. On February 11, 2020, Doan pleaded no contest to stalking and the vandalism charge was dismissed, with sentencing continued to a further date.

Prior to sentencing, the District Attorney filed a written request for a specific restitution order in the total amount of $163,899.31. This amount encompassed various expenses that D.H. indicated she had incurred as a result of Doan's conduct as follows: (1) Past psychiatric appointments: $650; (2) Future psychiatric appointments: $100,000; (3) Medication: $15.46; (4) Acupuncture: $617.11; (5) Sleeping aid drops: $187; (6) Victim's car tires: $694.19; (7) Victim's car body/paint: $710.43; (8) Victim's father's car: $271.82; (9) Security system improvements: $884.73; (10) Temporary relocation: $494.57; (11) Lost wages: $11,250; (12) Reduced wages: $45,874; (13) Life coaching: $2,250.

With respect to her lost wages, D.H. stated that she had to delay her employment start date to deal with the repercussions of Doan stalking her. D.H. provided a paycheck and a calculation using this paycheck to support her request.

In a written response, Doan's trial counsel objected to many of D.H.'s requests, including her request for lost wages.[3] Doan's counsel claimed that D.H. was requesting lost wages from September 2017 through November 2017 but had only provided a paycheck from March 2018 with no employer name listed. Doan's counsel claimed that this paystub was insufficient to establish the requested lost wages, because it did not confirm that D.H. had been working for the same employer and earning the same amount for the time period in question.

---

[3] Appellant's motion to augment the record to include Doan's brief concerning victim restitution was granted on May 26, 2022.

On January 29, 2021, prior to imposing sentence, the trial court held a restitution hearing. At the hearing, Doan's counsel again objected to a number of the items requested by D.H., including her reduction in wages, future psychiatric appointments, and relocation expenses, but did not mention the request for lost wages. The district attorney briefly addressed the issue of lost wages, stating that D.H.'s written statement to the court should be enough to explain the lost wages and delay in starting the job. D.H. also spoke briefly at the hearing, where she discussed the psychological and mental health challenges she had faced as a result of Doan's actions, and the effect these challenges had on her behavior, including her ability to perform her job and her interactions with new people.

The trial court ultimately ordered Doan to pay D.H. a total amount of $63,926.48 in restitution. In reaching this amount, the court did not award a number of items requested by D.H. The court only included half the cost of repairing D.H.'s father's vehicle since the requested amount was for two tires, and only the damage to one tire was attributable to Doan's actions. The court also did not include the request for temporary relocation costs, finding there was no nexus between the relocation, which took place prior to September 2017, and Doan's actions. The court also declined to include future counseling costs, finding that there was insufficient information demonstrating that the costs had been incurred or were likely to be incurred in the future. The court granted the remaining amounts requested, including lost wages of $11,250, noting that the amount reflected "a period from the time that [D.H.] started to report these crimes all the way through November and perhaps a little bit thereafter. And I believe case law is clear that if there's an interference with employment to deal with court issues, testifying as a . . . witness, reporting it to the police, et cetera, there can be a claim for lost wages as part of those economic losses."

Doan timely appealed.

4

## II. DISCUSSION

Doan contends the restitution order should be reversed for a number of reasons. First, he claims that there was insufficient evidence presented to support D.H.'s claim for lost wages. Second, he argues he was entitled to a jury trial on restitution under both the United States and California Constitutions. Third, he claims that the trial court erred in ordering significant restitution without first assessing his ability to pay, and the award therefore constitutes excessive punishment and violates his due process and equal protection rights. For the reasons below, we reject these claims as meritless.

### A. Sufficiency of Evidence Regarding Lost Wages

#### 1. Applicable law and standard of review

The California Constitution provides that crime victims have a right to receive "restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art. I, § 28, subd. (b)(13)(A).) Section 1202.4 implements this constitutional mandate and requires full victim restitution in criminal cases. (§ 1202.4, subd. (f).)

Section 1202.4, subdivision (f), provides in relevant part that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court" (*id*., subd. (f)), and that the restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." (*Id*., subd. (f)(3).)

Wages lost by a victim due to a crime are compensable under section 1202.4, subdivision (f), in a variety of circumstances. (See § 1202.4, subd. (f)(3)(E) ["[w]ages or profits lost by the victim . . . due to time spent as a witness or in assisting the police or prosecution"]; *People v. Moore* (2009) 177 Cal.App.4th 1229, 1233 [court did not abuse

5

its discretion in ordering defendant to pay burglary victim $6,250 for the wages lost while attending court proceedings]; *In re K.F.* (2009) 173 Cal.App.4th 655, 665-666 [sick leave used by victim was compensable loss].)

We review a restitution order for abuse of discretion. (See *People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).) " ' " 'Where there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " ' " (*Ibid*.) " 'In reviewing the sufficiency of the evidence [to support a factual finding], the " 'power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." ' " (*Ibid*.)

" 'Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] "If the circumstances reasonably justify the [trial court's] findings," the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact.' " (*Millard*, *supra*, 175 Cal.App.4th at p. 26.) " '[T]he court's discretion in setting the amount of restitution is broad, and it may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole.' " (*Ibid*.)

### 2. *There was sufficient evidence to support D.H.'s claims for lost wages*

Doan contends that the court's award of lost wages was speculative and based on insufficient information provided by D.H. He claims that D.H. provided inconsistent accounts about how long she had to delay her start date, initially claiming that it was a six-week delay and later stating it was approximately nine weeks. He also argues that she provided no information on when exactly she had planned to start working after being abroad for "a year and half."

6

The Attorney General asserts that the information provided was sufficient to establish a prima facie case for D.H.'s lost wages between September 2017 and November 2017. The Attorney General points to D.H.'s written statement, where she indicated that she had planned to begin working on September 11, 2017, but was forced to delay her start date until mid-November 2017, after Doan was in custody, in order to work with detectives, police officers, and courthouse officials to ensure her safety. The Attorney General also notes that Doan did not object to the amount of lost wages requested or make any attempts to rebut the evidence at the restitution hearing, including asking D.H. any questions to clarify relevant dates or how she arrived at her estimate for lost wages.

In reply, Doan claims that he did object to the lost wages request in his written brief opposing restitution. He further contends that there was no prima facie showing to support D.H.'s request from either her statements or the paystub provided, as she did not provide any evidence of when she was supposed to start working or for whom; additionally, the paystub was only from 2018 and did not have the name of the employer listed. Doan argues, therefore, that he had no way of confirming the delay in her start date or that this paystub was for the same employer she began working for in 2017.

In reviewing D.H.'s written statement and the paystub provided, we find that this information reasonably supported the trial court's decision to award D.H. six weeks of lost wages. While there certainly could have been other information provided in support of D.H.'s claim, such as a letter confirming her original start date or a paystub from her actual start date, there is no requirement that a restitution award be based on the *best* evidence available, so long as there is a rational basis for the inference drawn by the trial court in making the award. (See *Millard*, *supra*, 175 Cal.App.4th at p. 26; *People v. Baker* (2005) 126 Cal.App.4th 463, 469-470.) Here, while the paystub was dated for February 2018, D.H.'s written statement indicated that this paystub also reflected her biweekly pay in November 2017. Accordingly, we conclude that there was sufficient

7

evidence to establish a prima facie case for D.H.'s lost wages, and the trial court did not abuse its discretion in awarding the amount requested.

### B. Right to Jury Trial for Restitution

Doan contends that he is entitled to a jury trial on the issue of restitution. While he acknowledges he did not raise this issue in the trial court, he claims that he should not be barred from raising it because it involves a pure issue of law. Alternatively, he claims that it would have been futile to raise the issue at the trial court level in light of binding case law to the contrary.

The Attorney General maintains that Doan forfeited his claim by failing to raise this objection at the trial court. The Attorney General further argues that even if Doan did not forfeit his claim, case law clearly establishes that he has no right to a jury trial on the issue of restitution under either state or federal law.

" '[R]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 92 (*Brooks*).) Doan correctly notes that the Courts of Appeal have held that there is no right to a jury trial regarding restitution. As the trial court in this case would have therefore been bound to reject his argument, Doan may properly raise the claim in this court. (See *ibid*.)

Turning to the substance of Doan's claim, he primarily relies on *Apprendi v. New Jersey* (2000) 530 U.S. 466, and *Southern Union Co. v. United States* (2012) 567 U.S. 343. In *Apprendi,* the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, at p. 490.) In *Southern Union*, the United States Supreme Court held that a jury must determine "any fact, other than the fact of a prior conviction, that increases a criminal defendant's maximum potential sentence," and applied this rule to criminal fines. (*Southern Union*, *supra*, at p. 346; see *id*. at p. 349 [explaining that

"[c]riminal fines, like . . . other forms of punishment, are penalties inflicted by the sovereign for the commission of offenses"].)

However, as explained by the court in *People v. Pangan* (2013) 213 Cal.App.4th 574, neither *Southern Union* nor *Apprendi* "have any application to direct victim restitution, because direct victim restitution is not a criminal penalty. . . . [D]irect victim restitution is a substitute for a civil remedy so that victims of crime do not need to file separate civil suits. It is not increased 'punishment.' " (*Id.* at p. 585.) The appellate court in *Pangan* ultimately ruled that the defendant was not entitled to a jury trial regarding victim restitution. (*Id.* at pp. 576, 586.) Other decisions have reached the same conclusion that there is no right to a jury trial regarding victim restitution. (See, e.g., *Millard*, *supra*, 175 Cal.App.4th at pp. 35-36; *People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1183-1184; *People v. Wasbotten* (2014) 225 Cal.App.4th 306, 308-309; *People v. Foalima* (2015) 239 Cal.App.4th 1376, 1397-1399.)

Doan argues that victim restitution is "part of a defendant's punishment," noting that restitution hearings are a part of the sentencing hearing, and failure to pay a restitution award can result in probation being revoked. However, as explained in *Millard*, *supra*, 175 Cal.App.4th 7, "the primary purpose of a victim restitution hearing is to allow the People to prosecute an expedited hearing before a trial court to provide a victim with a civil remedy for economic losses suffered, and not to punish the defendant for his or her crime. To the extent a victim restitution order has the secondary purposes of rehabilitation of a defendant and/or deterrence of the defendant and others from committing future crimes, those purposes do not constitute increased punishment of the defendant . . . ." (*Id.* at pp. 35-36.)

Lastly, Doan claims that "[e]ven if restitution were civil, [he] has a constitutional right to a jury trial to determine the amount of the loss" under article I of the California Constitution. He argues that the amount of damages is an issue of fact that must be tried by a jury.

9

We are not persuaded by this contention. Although "the restitution order and the civil jury award produce the same result (an enforceable judgment against the defendant [citation]), they are a different means to that end, one based in the civil law, with its protections and requirements, and the other in criminal law, with its own protections and requirements. The restitution hearing . . . is a criminal sentencing hearing, not a civil trial." (*People v. Smith* (2011) 198 Cal.App.4th 415, 434.)

Further, the California Constitution generally provides that "[t]rial by jury is an inviolate right and shall be secured to all . . . ." (Cal. Const., art. I, § 16.) With respect to civil trials, "[g]enerally, 'if the action is essentially one in equity and the relief sought "depends upon the application of equitable doctrines," the parties are *not* entitled to a jury trial.' " (*People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51, 121, italics added.) As a general matter, restitution is a remedy available in an equitable action (see *People v. Superior Court* (1973) 9 Cal.3d 283, 286) to which there is no right to a jury trial. While Doan attempts to argue that an award of criminal restitution does not rest on equitable factors, he provides no persuasive legal authority that supports this contention. Doan also provides no legal authority that clearly establishes the right to a jury trial for victim restitution in this case. (See *People v. Rivera* (1989) 212 Cal.App.3d 1153, 1159-1161 [rejecting the contention that a defendant has the right to a jury trial on the issue of restitution under Cal. Const., art. I, § 16].)

In conclusion, we find that Doan had no right to a jury trial under the United States or California Constitution.

## C. *Excessive Fine*, *Equal Protection*, *and Due Process Claims*

Doan argues that the total amount of restitution ordered of $63,500 should be considered an excessive fine under the Eighth Amendment of the United States Constitution. He further claims that the award violated his equal protection and due process rights due to his indigent status. He again argues that his failure to raise these objections at the trial court did not forfeit his right to raise them on appeal as they involve

10

pure issues of law, and it would have been futile to raise the issues at the trial court level in light of binding case law to the contrary.

The Attorney General again argues that these claims should be forfeited because Doan did not raise these objections at the trial court. The Attorney General further argues that, to the extent that these claims are not forfeited, the order remains valid as direct victim restitution is non-punitive and does not implicate the Eighth Amendment's restriction against cruel and unusual punishment. The Attorney General additionally argues that victim restitution is fundamentally different from the fines and assessments associated with criminal sentences such that it should not be subject to an ability to pay analysis.

As discussed above, reviewing courts will excuse failure to raise an objection at the trial level if doing so would have been futile in light of case law to the contrary. (*Brooks*, *supra*, 3 Cal.5th at p. 92.) As Courts of Appeal have previously held that victim restitution is not considered a fine, and therefore, do not require an ability-to-pay determination, the trial court would have been bound to reject Doan's argument. Therefore, Doan may properly raise his claims in this court. (See *ibid*.)

As correctly noted by the Attorney General, Doan's claims primarily rest on his contention that victim restitution is punitive in nature and should be treated in the same manner as the fines, fees, and assessments that are included in a criminal sentence. In essence, Doan asks us to extend the ruling in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), which only addressed the aforementioned fines and fees, to direct victim restitution. For the reasons explained below, we decline to do so.

In *Dueñas*,[4] the appellate court held that the imposition of a court operations assessment and a court facilities assessment without a determination of the defendant's

---

[4] We acknowledge that the Courts of Appeal have conflicting opinions on whether *Dueñas* was decided correctly and that the issue is currently before the California (continued)

11

ability to pay was "fundamentally unfair" and violated due process under the federal and state Constitutions. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1168.) The court also concluded that the execution of a restitution fine under section 1202.4 "must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas*, *supra*, at p. 1164.)

However, the court in *Dueñas* distinguished restitution fines from direct restitution to the victim, explaining that a restitution fine is "set at the discretion of the court in an amount commensurate with the seriousness of the offense and within a range set by statute," and therefore "is intended to be, and is recognized as, additional punishment for a crime." (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1169.) In contrast, the *Dueñas* court noted that direct restitution is to compensate the victim for any losses suffered because of the defendant's crime. (*Ibid.*) Further, as discussed above, it is well-established that victim restitution is not considered part of a criminal punishment and is non-punitive in nature. (*Millard*, *supra*, 175 Cal.App.4th at pp. 35-36; *People v. Harvest* (2000) 84 Cal.App.4th 641, 649-650.)

Other appellate courts have relied on this distinction in declining to extend the *Dueñas* ability-to-pay analysis to direct victim restitution. (See *People v. Evans* (2019) 39 Cal.App.5th 771, 776-777; *People v. Allen* (2019) 41 Cal.App.5th 312, 326.) In addition, one appellate court relied on the difference in purpose between direct victim restitution and fines and assessments in concluding that direct victim restitution was not punishment, and therefore would not be considered a fine under the Eighth Amendment. (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1071, fn. 27.)

---

Supreme Court. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 95 [agreeing with *Dueñas* that due process requires an ability-to-pay determination before imposition of court operations or court facilities assessments], review granted Nov. 13, 2019, S257844.) However, this conflict does not affect our analysis and decision herein.

More importantly, section 1202.4, subdivision (g) explicitly states that a defendant's inability to pay "shall not be a consideration in determining the amount of a restitution order." Notably, Doan does not cite this subdivision in his argument, and he fails to cite any legal authority that provides an exception to this subdivision.

Given the difference in the fundamental purposes behind restitution fines and direct restitution, we agree that direct victim restitution should not be viewed in the same light as fines and fees, and therefore, is not subject to the restriction against excessive fines under the Eighth Amendment. For the same reasons, as well as the express direction provided in section 1202.4, subdivision (g), we agree with the holdings in *Evans* and *Allen*, and decline to extend the holding in *Dueñas* to direct victim restitution.

## D. *Ineffective Assistance of Counsel*

Doan alternatively contends that, to the extent that his trial counsel forfeited any of his claims above by not raising them at the trial level, he received ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish both that his or her counsel's performance was deficient and that he or she suffered prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) The deficient performance component of an ineffective assistance of counsel claim requires a showing that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. (*Id.* at p. 688.) Regarding prejudice, a "defendant must show that there is a reasonable probability"—meaning "a probability sufficient to undermine confidence in the outcome"—"that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id.* at p. 694.)

As explained above, many of Doan's claims above would have been futile in the trial court due to binding case law. Accordingly, Doan cannot demonstrate a reasonable probability that the results of the restitution hearing would have been different if his trial counsel had raised the same objections addressed herein. We therefore find no merit in

13

defendant's claim of ineffective assistance of counsel based on the failure to object (see *People v. Lopez* (2008) 42 Cal.4th 960, 966 [ineffective assistance of counsel claim requires a showing of prejudice]).

### III.  DISPOSITION

The restitution order is affirmed.

_____
                                       Wilson, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Danner, J.

People v. Doan
H048975