Filed 3/18/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.E., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>S.E.,<br><br>    Defendant and Appellant. | F078904<br><br>(Super. Ct. No. 16CEJ600046-2)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County. Gregory T. Fain, Judge.

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

S.E., then age 16, admitted making criminal threats in violation of Penal Code section 422. He was adjudged a ward of the court (Welf. & Inst. Code,[1] § 602, subd. (a)) and placed on probation on various terms and conditions. After a restitution hearing, S.E. was ordered to pay victim restitution in the amount of $3,726 plus 10 percent interest per annum. S.E. now challenges this amount.[2]

An award of victim restitution requires causality between the minor's conduct (or adult defendant's crime) and the victim's loss. In this case, it appears the juvenile court applied the presumption of causality contained in Penal Code section 1202.4, subdivision (f)(4)(A) to victim restitution ordered under section 730.6. To the extent it did so, it erred. Such a presumption does not appear in section 730.6, which governs restitution in juvenile matters. Nevertheless, we reject S.E.'s claim that his conduct was not shown to be a substantial factor in any injury to the so-called derivative victims. We also conclude the juvenile court properly imposed interest on the amount of restitution. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY[3]

On the evening of December 2, 2017, Fresno police officers were dispatched to the home of D.R. in response to a report S.E. was outside the residence and was threatening to shoot into the house if D.R. did not come out. Officers found S.E. hiding

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] S.E. has appealed only from the postdisposition order setting the amount of restitution. Such an appeal is proper. (§ 800, subd. (a).)

[3] The facts of the offense are taken from the probation officer's deferred entry of judgment (DEJ) suitability report. S.E. admitted the violation of Penal Code section 422 alleged in the wardship petition for purposes of obtaining DEJ. When he was found eligible but not suitable for that disposition, he left his admission in place.

In light of the issues on appeal, we summarize only the procedural history related to the determination of restitution.

2.

behind a vehicle. What was determined to be a plastic Airsoft handgun was found nearby.

D.R. told police that she and S.E. had been in a dating relationship for four years, and that he had been violent toward her in the past. They had plans to go to Christmas Tree Lane that evening, but they got into an argument earlier in the day and D.R. decided to cancel their plans. S.E. became very upset and began texting D.R. repeatedly, asking her to meet with him so they could talk. She told him that she did not want to see him and for him not to come to her house. When he texted her to say he was outside and she had better come out and talk to him, she told him to go away. He continued to demand that she come outside, and texted that for every minute he waited, he was going to cut off another one of her mother's fingers when he came inside. He then sent D.R. a picture of what she believed to be a handgun and texted that if D.R. did not come out of the house, he was going to shoot inside of the residence. He said that if she came to the window, she would see that he was pointing a gun at her window. D.R. believed he was going to shoot inside the house and possibly hurt or kill her or her mother.

S.E. told officers that he had been dating D.R. for four and a half years. He said he had seven different types of anger problems. He said D.R. knew he had the BB gun with him, and she believed it was a real gun. He said he carried it with him in case he needed to scare anyone who might try to harm him while he was on a city bus. S.E. admitted having had suicidal/homicidal thoughts before, and said he had the means to get a real gun if he was actually going to kill D.R. and then himself. He said he felt provoked on the night of the incident because D.R. told him by text that she did not believe he would come to her house and that he was just a " 'bitch.' " He felt he needed to prove he was not a " 'bitch,' " and that was the reason he brought the BB gun and sent her a picture of it. He did not actually intend to hurt her, but only to scare her.

On November 8, 2018, the California Victim Compensation Board (the board) submitted a request to the Fresno County District Attorney's Office for restitution in the

3.

amount of $1,701 for mental health benefits paid to D.R.; $1,377 for mental health benefits paid to I.L. (D.R.'s mother); and $648 for mental health benefits for F.L. (apparently, D.R.'s younger brother), for a total of $3,726. The board further requested that payment of restitution be made a condition of probation, and advised that the court was statutorily required to impose 10 percent interest per annum on the restitution amount pursuant to Penal Code section 1202.4, subdivision (f)(3)(G).

Through counsel, S.E. asked the court to reduce or stay the proposed restitution order as to I.L. and F.L.[4] In pertinent part, he argued that although the People could provide evidence of services rendered to those two claimants, the People could not provide evidence showing S.E.'s conduct was a substantial factor in causing those claimants' injuries, as required for restitution. The People responded that, pursuant to Penal Code section 1202.4, subdivision (f)(4)(A), evidence of payment by the restitution fund created a rebuttable presumption that the victims' losses were directly related to the defendant's criminal conduct. The People further argued that interest should accrue at 10 percent per annum pursuant to Penal Code section 1202.4, subdivision (f)(3)(G), and that the county should be permitted to impose an administrative fee not to exceed 15 percent of the restitution owed pursuant to Penal Code section 1203.1, subdivision (*l*).

At the hearing, the court stated it had reviewed the provisions of Penal Code section 1202.4, as well as the original certified documents contemplated by that statute as creating a rebuttable presumption that the amounts paid were the correct amount of restitution.[5] Defense counsel argued that language creating a rebuttable presumption was not included in section 730.6, the statute controlling restitution for juvenile proceedings;

---

[4] S.E. expressly did not object to paying the amount of restitution attributable to D.R.

[5] The record on appeal does not contain any documents other than the board's restitution request. Nevertheless, it is clear additional documents were before the court. In an earlier proceeding at which the matter was set for a restitution hearing, the court stated it had "the complete certified set of redacted documents . . . ."

thus, while the certified documents likely proved the victim and her immediate family sought certain services that were rendered and paid for, they did not establish the requisite causal connection. The People observed that section 730.6 included the immediate family of the victim in the definition of "victim" for restitution purposes. Defense counsel responded that a family member might be a victim, but this did not mean the harm was caused by the minor. Counsel argued that D.R.'s mother and younger brother might have needed counseling before the incident with S.E., and that the People had not presented proof of causation otherwise. The People countered that before any payment was made, there had to be proof to the board that the services provided were directly related to the crimes; accordingly, the certified documents before the court were sufficient proof of a substantial factor.

After additional argument (most of which was focused on S.E.'s assertion that, aside from the causation issue, compelling or extraordinary reasons existed not to order the full restitution amount), the court stated, in pertinent part:

> "Okay. You know, I've already given you an overview of — my view on this is that restitution to victims is usually important. In fact it's in our Constitution, our state Constitution. It is the right and just thing to do, um, to have victims made whole for harm done by persons who have acted in a criminal way. I'm not at all taking away from that when I discussed that earlier. It is true.

> "My questions and my research are focused on whether we should differentiate juvenile — juveniles when we have a reimbursement. The victims have been made whole. And now the State is coming back and wanting the money back, which is authorized under the law, money paid back to the restitution fund. And so that that money will be there for other victims, presumably. Certainly I would hope that that would be the case.

> "The way the State wastes money on all sorts of things today, my gosh, you know — it's a hard thing. But I get the goal. I get the statutes. The law is really strict. I didn't find — I looked. Okay. I looked. And your attorney is really good. He looked too. I didn't find, um, specific case law that would have allowed me to simply differentiate, just on their face,

5.

minors to adults. I don't find that to be — any argument in that regard to be persuasive. [¶] . . . [¶]

"What I'm going to do now is I'm going to grant the request. And I'm going to order that — I'm going to find that the People have met their burden. There has not been any sufficient rebuttal in this regard. The certified documents provide the amounts have been paid. Full amount of restitution being $3726. That is going to be the restitution that's ordered to be made to the Crime Victims Compensation Board fund by the minor to that fund.

"I'm going to do this, though — and I'm ordering the full restitution as requested by the People including the legal interest that's specified in the statute. I'm not allowed, as far as I can tell, to set a different interest rate. Okay?"

## **DISCUSSION**

### *General Legal Principles*

"Enacted in 1982, Proposition 8, the 'Victims' Bill of Rights,' amended the California Constitution to provide that 'all persons who suffer losses' resulting from crime are entitled to 'restitution from the persons convicted of the crimes causing the losses.' (Cal. Const., art. I, § 28, subd. (b)(13)(A).) In 1983, the Legislature enacted Penal Code section 1202.4, which requires a full victim restitution order in criminal cases for every determined economic loss unless there are compelling and extraordinary reasons not to do so. (Pen. Code, § 1202.4, subd. (f).) In 1994, the Legislature enacted section 730.6 to provide 'parallel restitutionary requirements for juvenile offenders.' [Citation.]" (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 304, fn. omitted.) " ' "In keeping with the [voters'] 'unequivocal intention' that victim restitution be made, statutory provisions implementing the constitutional directive have been broadly and liberally construed." ' [Citation.]" (*Id*. at p. 305.)

"An order of direct victim restitution acts to make the victim whole, rehabilitate the minor, and deter future delinquent behavior [citations], and is reviewed for abuse of discretion [citations]." (*Luis M. v. Superior Court*, *supra*, 59 Cal.4th at p. 305.)

"However, where the specific issue is whether a court has the authority to issue restitution, we review that question of law independently. [Citation.] And where the specific issue is whether the court's factual findings support restitution, we review those findings for substantial evidence. [Citations.]" (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1098.)

"No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered. ' "[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt." ' [Citation.]" (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.) Nevertheless, "[a] restitution order that is based on a demonstrable error of law constitutes an abuse of the trial court's discretion. [Citation.]" (*People v. Woods* (2008) 161 Cal.App.4th 1045, 1049.) "No court has discretion to make an order not authorized by law, or to find facts for which there is not substantial evidence." (*In re K.F.* (2009) 173 Cal.App.4th 655, 661.)

Section 730.6, subdivision (a)(1) provides: "It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs an economic loss *as a result of the minor's conduct* shall receive restitution directly from that minor." (Italics added.) Penal Code section 1202.4, subdivision (a)(1) similarly provides: "It is the intent of the Legislature that a victim of crime who incurs an economic loss *as a result of the commission of a crime* shall receive restitution directly from a defendant convicted of that crime." (Italics added.)

The emphasized portion of each statute "is language of causation." (*In re A.M.* (2009) 173 Cal.App.4th 668, 673.) Two aspects of causation are at play: "cause in fact (also called direct or actual causation), and proximate cause." (*People v. Jones* (2010) 187 Cal.App.4th 418, 424.)

" 'An act is a cause in fact if it is a necessary antecedent of an event.' [Citation.]" (*People v. Jones*, *supra*, 187 Cal.App.4th at p. 425.) " '[T]hat the defendant's conduct was a necessary antecedent of the injury does not resolve the question of whether the

defendant should be liable. . . . "[T]he consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts . . . ." [Citation.] Therefore, the law must impose limitations on liability other than simple causality. These additional limitations are related not only to the degree of connection between the conduct and the injury, but also with public policy. [Citation.]' " (*Ibid.*)

"California courts have adopted the 'substantial factor' test in analyzing proximate cause. [Citation.] ' "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." [Citation.] Thus, "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage or loss is not a substantial factor" [citation], but a very minor force that does cause harm is a substantial factor [citation].' " (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321-1322.) " 'The substantial factor standard . . . subsumes the "but for" test while reaching beyond it to satisfactorily address other situations, such as those involving independent or concurrent causes in fact. [Citations.]' [Citation.]" (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1396.) Thus, so long as the minor's conduct was a substantial factor in causing the economic loss incurred by the victim or victims, it need not have been the sole cause of that loss. (See *In re A.M.*, *supra*, 173 Cal.App.4th at p. 673.)

The main question before us in this appeal is the adequacy of the showing that S.E.'s conduct was a substantial factor in causing the economic loss incurred by derivative victims I.L. and F.L.[6]

---

[6] For purposes of section 730.6, "victim" includes someone who sustained economic loss as the result of a crime and who, at the time of the crime, was the victim's parent or sibling. (§ 730.6, subd. (j)(4)(A).) Penal Code section 1202.4, subdivision (k)(3)(A) contains the same definition. Because S.E.'s criminal threats were made directly to D.R., she may properly be termed the direct victim, while I.L. and F.L. may be

### *The Applicability of Penal Code Section 1202.4, Subdivision (f)*

Penal Code section 1202.4, subdivision (f)(4) provides:

> "(A) If, as a result of the defendant's conduct, the Restitution Fund has provided assistance to or on behalf of a victim or derivative victim pursuant to Chapter 5 (commencing with Section 13950) of Part 4 of Division 3 of Title 2 of the Government Code, *the amount of assistance provided shall be presumed to be a direct result of the defendant's criminal conduct* and shall be included in the amount of the restitution ordered.

> "(B) The amount of assistance provided by the Restitution Fund shall be established by copies of bills submitted to the California Victim Compensation Board reflecting the amount paid by the board and whether the services for which payment was made were for medical or dental expenses, funeral or burial expenses, mental health counseling, wage or support losses, or rehabilitation. Certified copies of these bills provided by the board and redacted to protect the privacy and safety of the victim or any legal privilege, together with a statement made under penalty of perjury by the custodian of records that those bills were submitted to and were paid by the board, shall be sufficient to meet this requirement.

> "(C) If the defendant offers evidence to rebut the presumption established by this paragraph, the court may release additional information contained in the records of the board to the defendant only after reviewing that information in camera and finding that the information is necessary for the defendant to dispute the amount of the restitution order." (Italics added.)

As previously noted, the record shows the juvenile court had before it the documents referenced in the foregoing provisions and not merely, as S.E. claims on appeal, the board's restitution request. We need not decide whether that request, standing alone, would be sufficient to invoke the presumption and impose a burden of refutation on S.E. if subdivision (f)(4) of Penal Code section 1202.4 applied in juvenile proceedings. (See *In re K.F.*, *supra*, 173 Cal.App.4th at p. 665; *People v. Gemelli*, *supra*, 161 Cal.App.4th at pp. 1542-1543.) Clearly, the certified documents would be sufficient,

termed derivative victims. All three are considered victims for purposes of a victim restitution order, however, and S.E. does not contend otherwise.

9.

despite the fact they undoubtedly contain hearsay and the record does not show they were ever moved into evidence.  (See, e.g., *In re T.C.* (2009) 173 Cal.App.4th 837, 848; *People v. Cain* (2000) 82 Cal.App.4th 81, 87, 88-89; *People v. Hove* (1999) 76 Cal.App.4th 1266, 1275.)

Section 730.6, which governs restitution in juvenile proceedings, contains no such language, however.  Rather, it provides, in pertinent part:

> "(h)(1) Restitution [to the victim or victims] shall be imposed in the amount of the losses, as determined. . . .  The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record.  A minor's inability to pay shall not be considered a compelling or extraordinary reason not to impose a restitution order, nor shall inability to pay be a consideration in determining the amount of the restitution order.  A restitution order . . . , to the extent possible, . . . shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602 . . . .  [¶] . . . [¶]

> "(2) A minor shall have the right to a hearing before a judge to dispute the determination of the amount of restitution.  The court may modify the amount on its own motion or on the motion of the district attorney, the victim or victims, or the minor. . . .

> "(i) A restitution order . . . shall identify the losses to which it pertains, and shall be enforceable as a civil judgment . . . .  The making of a restitution order pursuant to this subdivision shall not affect the right of a victim to recovery from the Restitution Fund in the manner provided elsewhere, except to the extent that restitution is actually collected pursuant to the order. . . .  Restitution imposed shall be ordered to be made to the Restitution Fund to the extent that the victim . . . has received assistance from the Victims of Crime Program pursuant to Article 5 (commencing with Section 13959) of Chapter 5 of Part 4 of Division 3 of Title 2 of the Government Code."

In construing a statute, our task is to determine the intent of the enacting body so that the law receives the interpretation best effectuating that intent.  (*In re R.V.* (2015) 61 Cal.4th 181, 192.)  Our analysis begins with the language of the statute, which generally

is the most reliable indicator of the Legislature's intent. (*Ibid.*) When the statutory language is clear, we need go no further. (*Ibid.*)

While the provisions of Penal Code section 1202.4 and section 730.6 parallel each other in a number of respects (see *In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132), the statutes are not identical (*In re M.B.* (2020) 44 Cal.App.5th 281, 284). The plain language of section 730.6 — what is stated rather than what is not stated — compels us to conclude that the presumption contained in Penal Code section 1202.4, subdivision (f)(4)(A) does not apply in juvenile proceedings governed by section 730.6. (See *In re M.W.* (2008) 169 Cal.App.4th 1, 5; *In re Johnny M.*, *supra*, 100 Cal.App.4th at p. 1132.)

The Attorney General suggests the omission of the presumption from section 730.6 is merely due to legislative oversight. We are not persuaded. "When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning. [Citation.]" (*People v. Trevino* (2001) 26 Cal.4th 237, 242; see *People v. Woodhead* (1987) 43 Cal.3d 1002, 1010.) " 'Our function is not to judge the wisdom of statutes. [Citation.] Nor are we empowered to insert what a legislative body has omitted from its enactments. [Citation.]' [Citation.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 954-955.)

In light of the multitudinous differences between adult criminal and juvenile proceedings, we cannot say the Legislature could have had no reason for applying the presumption in the former but not the latter. This is not a situation where, for example, particular victims or economic losses are explicitly covered in Penal Code section 1202.4 but not in section 730.6. In such cases, courts construing section 730.6 have concluded — either because of the constitutional mandate of victim restitution, section 730.6's use of terms of enlargement such as "include[s]" and "including," or both — that the omission is not fatal to an award of restitution pursuant to section 730.6. (See, e.g., *In re Scott H.* (2013) 221 Cal.App.4th 515, 521-522 [derivative victims entitled to restitution

11.

under § 730.6, former subd. (j) despite their omission from statutory definition of victim]; *In re M.W.*, *supra*, 169 Cal.App.4th at pp. 4-7 [cost of mental health services recoverable under § 730.6, subd. (h) despite lack of express authorization in statutory language]; *In re Imran Q.* (2008) 158 Cal.App.4th 1316, 1320-1321 [omission of attorney fees and costs from list of recoverable losses in § 730.6, subd. (h) was legislative oversight].)  The type of omission addressed in these cases differs significantly from the omission of an evidentiary presumption.

We recognize that restitution statutes are to be interpreted broadly and liberally, and that any interpretation that limits a victim's right to restitution would be contrary to the expressed intent and purpose of article I, section 28 of the California Constitution. (*In re M.W.*, *supra*, 169 Cal.App.4th at p. 5; *In re Johnny M.*, *supra*, 100 Cal.App.4th at pp. 1132-1133.)  The Attorney General argues that if the presumption contained in Penal Code section 1202.4, subdivision (f)(4)(A) is held to be inapplicable to juvenile cases, it will be more difficult to prove victim restitution in such matters, "thereby potentially thwarting the goals of juvenile court victim restitution . . . ."

We disagree.  We are aware of nothing that would prevent the board from establishing the amount of assistance provided by the restitution fund in the same manner as provided in Penal Code section 1202.4, subdivision (f)(4)(B).  (See *In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1392.)  As we will explain in more detail when we address sufficiency of the evidence, *post*, because of the legal prerequisites to the payment of assistance from the restitution fund by the board, these documents provide prima facie evidence of causality.  As a practical matter, this is no different than what is achieved by the presumption contained in Penal Code section 1202.4, subdivision (f)(4)(A).  (See *People v. Lockwood* (2013) 214 Cal.App.4th 91, 100-101; *Kahn v. East Bay Mun. Util. Dist.* (1974) 41 Cal.App.3d 397, 414.)

Although we do not find cases such as *Scott H.*, *M.W.*, and *Imran Q.* on point with respect to applicability of the presumption contained in Penal Code section 1202.4,

12.

subdivision (f)(4)(A) to juvenile proceedings, they are instructive with regard to S.E.'s claim the juvenile court erred by imposing interest on the award of restitution.

Penal Code section 1202.4, subdivision (f)(3) directs that a restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following:  [¶]  (A) Full or partial payment for the value of stolen or damaged property. . . .  [¶]  (B) Medical expenses.  [¶]  (C) Mental health counseling expenses.  [¶]  (D) Wages or profits lost due to injury incurred by the victim . . . .  [¶]  (E) Wages or profits lost by the victim . . . due to time spent as a witness or in assisting the police or prosecution. . . .  [¶]  (F) Noneconomic losses . . . for felony violations of [specified statutes].  [¶]  (G) *Interest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court*.  [¶] (H) Actual and reasonable attorney's fees and other costs of collection . . . .  [¶] (I) Expenses incurred by an adult victim in relocating away from the defendant . . . .  [¶] (J) Expenses to install or increase residential security . . . .  [¶]  (K) Expenses to retrofit a residence or vehicle . . . to make the residence accessible to or the vehicle operational by the victim, if the victim is permanently disabled . . . as a direct result of the crime.  [¶] (L) Expenses for a period of time reasonably necessary to make the victim whole, for the costs to monitor the credit report of, and for the costs to repair the credit of, a victim of identity theft . . . ."  (Italics added.)

By contrast, section 730.6, subdivision (h)(1) is not nearly as detailed.  As relevant here, it provides that a restitution order "shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602, including all of the following:  [¶]  (A) Full or partial payment for the value of stolen or damaged property. . . .  [¶]  (B) Medical expenses.  [¶]  (C) Wages or profits lost due to

13.

injury incurred by the victim . . . . [¶] (D) Wages or profits lost by the victim . . . due to time spent as a witness or in assisting the police or prosecution. . . ."

As we have seen, despite the brevity of section 730.6, subdivision (h)(1) when compared to Penal Code section 1202.4, subdivision (f)(3), courts have taken an expansive view in terms of permitting an award of restitution in juvenile cases to those defined as victims in, and for losses expressly covered by, the latter statute but not the former. (See, e.g., *In re Scott H.*, *supra*, 221 Cal.App.4th at pp. 521-522; *In re M.W.*, *supra*, 169 Cal.App.4th at pp. 4-7; *In re Imran Q.*, *supra*, 158 Cal.App.4th at pp. 1320-1321.) No reason appears why the same approach and conclusion should not be reached with regard to the imposition of interest.

An order of restitution is not intended to provide the victim with a windfall. (*In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1017.) Nevertheless, while the amount of restitution ordered cannot be arbitrary or capricious, it need not be limited to the exact amount of loss. (*In re Brittany L.*, *supra*, 99 Cal.App.4th at p. 1391.) Where a victim, or, as in this case, the state, pays out money for expenses incurred by the victim as a result of a defendant's or a minor's criminal conduct, the use of that money for other purposes is lost until reimbursed by the payment of restitution. (See *People v. Evans* (2019) 39 Cal.App.5th 771, 778.) In the adult context, the Legislature has determined 10 percent per annum is appropriate recompense for this loss of use. On this issue, "[w]e see no reason to distinguish between an adult's and a juvenile's duty to provide full restitution to their victims. [Citation.]" (*In re Imran Q.*, *supra*, 158 Cal.App.4th at pp. 1320-1321.)

### *Sufficiency of the Evidence*

S.E. argues that without use of the presumption contained in Penal Code section 1202.4, subdivision (f)(4)(A), the evidence was insufficient to establish his conduct was a substantial factor in causing harm to I.L. and F.L.[7] We disagree.

---

[7] Although the juvenile court erred to the extent it applied the presumption of causality contained in Penal Code section 1202.4, subdivision (f)(4)(A), if substantial

14.

It was undisputed, both from the board's restitution request and the certified documents from that agency that were before the court, that the board had already paid for the victims' counseling.**8**  The board is an agency within the California state government.  (Gov. Code, § 13901.)  The Legislature has enacted statutes governing the procedure by which crime victims may obtain compensation from the restitution fund through the board.  (*Id.*, § 13950, subd. (b); see *People v. Evans*, *supra*, 39 Cal.App.5th at p. 778.)  Under those statutes, a victim or derivative victim is only eligible for compensation if, insofar as is relevant here, the injury was a direct result of a crime.  (Gov. Code, § 13955, subds. (a), (e)(1) & (f).)  The application for compensation must be verified under penalty of perjury by the person seeking compensation.  (*Id.*, § 13952, subd. (b)(1).)  The board may "reimburse the amount of . . . mental health counseling-related expenses incurred by the victim or derivative victim . . . *that became necessary as a direct result of the crime . . . .*"  (*Id.*, § 13957, subd. (a)(2), italics added.)  Before payment can be made, the board "shall verify with hospitals, physicians, law enforcement officials, or other interested parties involved, the treatment of the victim or derivative victim, circumstances of the crime, amounts paid or received by or for the victim or derivative victim, and any other pertinent information deemed necessary by the board" (*id.*, § 13954, subd. (a)).

In addition, administrative regulations, which were adopted by the board for the purpose of enforcing and implementing the code sections, and which have the force and effect of law (*People v. Cain*, *supra*, 82 Cal.App.4th at p. 89), require applicants for

---

evidence was presented anyway, we are empowered to uphold its decision.  (See *People v. Zapien*, *supra*, 4 Cal.4th at p. 976; *People v. Braeseke* (1979) 25 Cal.3d 691, 701, vacated on another ground *sub nom. California v. Braeseke* (1980) 446 U.S. 932.)

**8**　　While it is unclear from the record whether the documents were ever formally moved into evidence, it is clear that they were before the juvenile court, and that S.E. implicitly conceded their existence and contents.  (See *People v. Cain*, *supra*, 82 Cal.App.4th at pp. 88-89.)

assistance to submit a complete statement of losses directly related to the crime, including, where mental health services were received, "a description of the services provided along with a statement that the services were in fact received and that such services were required as a direct result of the qualifying crime and for no other reason." (Cal. Code Regs., tit. 2, § 649.7, subd. (a)(5).) The board is authorized to "require the submission of mental health treatment session or progress notes in order to determine whether the treatment will best aid the victim or derivative victim and is necessary as a direct result of the qualifying crime." (*Id.*, subd. (b)(1).) The application must be certified under penalty of perjury. (*Id.*, subd. (d).)

In light of the foregoing statutes and regulations, we conclude the certified documents before the court were inherently reliable. (*People v. Cain*, *supra*, 82 Cal.App.4th at p. 88.) Because they required that causation be established as a prerequisite to payment, they furnished an adequate factual basis for the claim. (See *People v. Giordano* (2007) 42 Cal.4th 644, 664.) Thus, the court could rely on them as evidence of the amounts paid, and as prima facie evidence the victims' counseling was directly related to S.E.'s conduct. (*People v. Cain*, *supra*, at pp. 88-89.) By law, the board could not have made the payments otherwise, and we presume the board followed the law and its own regulations. (See Evid. Code, § 664; *In re Angelina E.* (2015) 233 Cal.App.4th 583, 588.)

S.E. did not carry his burden of refutation.[9] (See *In re K.F.*, *supra*, 173 Cal.App.4th at p. 665.) Accordingly, the award of restitution was proper.

---

[9] His counsel's suggestion I.L. and F.L. may have needed counseling before S.E. ever made his threats was based on nothing more than speculation. Moreover, S.E.'s conduct had only to be a substantial factor causing harm or loss, and not the sole factor. (See *In re A.M.*, *supra*, 173 Cal.App.4th at p. 673.)

## **DISPOSITION**

The order is affirmed.

_____
DETJEN, J.

WE CONCUR:


_____
POOCHIGIAN, Acting P.J.


_____
MEEHAN, J.